Tucker, Judge.
Cordall Norfleet, first husband of Mary Gee, one of the complainants, on the 21st of March, 1788, made his will, and thereby gave to Cordall Norfleet Bynum, 694 acres of land in North Carolina, and a negro man j about which there seems to be no question. He then gives to his son John Norfleet, all the residue of his land, to him and his heirs forever. The will then proceeds thus: “ Item, I give to my beloved wife Mary Norfleet (now Mary Gee) the use of all my land, for the benefit of my children, Elizabeth Norfleet, (now Elizabeth Blunt, one of the defendants) John Norfleet (since deceased, of full age) and Sarah Norfleet (afterwards married to one Jones, whom she survived, and died, after she had attained the age of nineteen or twenty years, but before the age of twenty-one, having made a will as hereafter mentioned) during her life, or widowhood, or until my son John Norfleet shall come of age, at which time, my said wife Mary shall have the use only of the plantation where I now live: I do also give to my said wife Mary Norfleet, during her life, or widowhood, all the residue of my estate, that I may die possessed of, for the benefit of my children, Elizabeth Norfleet, John Norfleet and Sarah Norfleet, to them and their heirs forever, at which time my will and desire is, that my wife Mary Norfleet, my friends, John Wilkinson and James Wilkinson, shall divide my estate in such manner as they may think best, between my children ;” and appoints them executors.
Mary Norfleet and John Wilkinson proved the will December 1788, and qualified as executors thereto, and time was reserved for the other executor to qualify j which he does not appear to have done.
*486 The bill is exhibited by James Gee and Mary his wife, (formerly the wife of the testator Norfleet,) William Henry Gee, and Lawrence Norfleet Gee, their children, infants under twenty-one years, and charges that Cordall Norfleet, the testator, died seized and ■ possessed of a considerable real and personal estate | that he made his will as above; that the widow hath renounced all benefit under the will, and received dower in the Southampton lands, and her distributable part of the personal estate; and that all the children therein named survived him; that, on the 24th of July, 1798, John Norfleet, the son, died of full age, intestate, leaving a widow, but no child : and leaving his mother, one of the complainants, his sister, Elizabeth Blunt, one of the defendants, and his sister, Sarah Jones, since deceased, of the whole blood, and the complainants, William H. Gee, and Lavinia N. Gee, his brothers and sisters of the half blood, on the part of his mother, then living; and seized and possessed not only of the estate devised from his father, but also of about 300 acres of land in Southampton county. •
That on the 21st of September, 1798, Sarah Jones (widow of Charles B. Jones, and one of the daughters of Cordall Norfleet, in his will mentioned,) made her will, and in the same year died, having attained the age of nineteen or twenty, only, whereby she gave certain legacies to the mother and sisters of her deceased husband, Jones, and then gives to Sarah Norfleet Blunt, daughter of William Blunt, one half of all the rest of her negroes, (with some exception) upon certain conditions, concerning which nothing is said in the bill, and then gives to Lavinia N. Gee (her half sister) all the residue of her negroes, both in remainder and reversion, (except those her brother John Norfleet got by his wife,) to her and her heirs forever. She then gives all the land she is entitled to, to her mother, Mary Gee, the complainant: and constitutes her uncle, John Wilkinson, her residuary legatee, and her executor, together with her father-in-law, James Gee, the complainant; who both proved the will, and took upon them the executorship.
*487 The bill then charges, that William Blunt, and Elizabeth his wife, daughter and legatee of Cordall Norfleet, and John Wilkinson, the executor both of Cordall Norfleet and Sarah Jones, will not agree to such a division of those estates respectively, as the complainants are advised is legal, and therefore prays process of subpoena.
William Blunt, and Elizabeth his wife, in their first anwer, admit the allegations of the bill generally, but say, that the complainant Mary (widow of Cordall Norfleet) did not renounce all benefit under the will, till about the year 1794, (five or six years after her husband’s death) after she had been several years in full possession and enjoyment of the property devised her by her former husband ; that they are advised she is now barred of her dower and distributive share of the personal estate, having elected to accept the provision made for her by the will; and they pray that she may be decreed to deliver up the dower lands which she holds, and account for the profits of them, together with the personal estate which she received as her distributive share, and the dower slaves which she now holds. That they are willing that such a division should be made of the estates of Cordall Norfleet, John Norfleet and Sarah Jones, as the law directs ; that they have reason to believe that the complainant Mary is accountable for a considerable proportion of Cordall Norfleet's estate, which she used while she was his widow ; and pray an account.
Afterwards, by way of amendment to their former answer, they say that the executor of Cordall Norfleet did, upon their intermarriage, allot to them about eleven slaves j that, since the death of John Norfleet, they have set apart seventeen as his property, and about the same number for Mrs. Jones; that there remain others, which are held by the complainants, and in which the complainant Mary claims dowers and they submit to the court, whether the slaves last mentioned are to be divided by order of the court, or whether, under the will, they are to be disposed of by John Wilkinson, the acting executor, among the children of the said Cordall Norfleet, and their representatives.
*488 The answer of John Wilkinson, the executor, admits, generally, the allegations of the bill; but states that the complainant Mary, before her marriage with Gee, conveyed all her title and interest in her deceased husband’s estate, to himself, (but this the counsel said is to be disregarded,) but avers it was done with no personal views, but in consideration of Gee’s embarrassed situation. He admits, that John Norfleet died, at the time mentioned in the bill, intestate, and believes his widow, (who is under twenty-one years of age,) is dissatisfied with the provision assigned her.
(Quars, If she ought not to have been made a party to the suit.)
Among the exhibits are a bill, answer and decree of Southampton court, for the assignment of dower to the now complainant Mary; and an allotment to her, of her share of the personal estate of Cordall Norfleet, November 19, 1794: But no report, in pursuance thereof, appears to have been made.
Several other exhibits are filed, which seem not to affect the principles upon which the case is to be decided.
The chancellor pronounced the following decree, in substance :
That the plaintiff Mary, by failing to’ renounce the benefit (if it were a benefit) under the will of her husband, was not barred of her dower in his lands; and of her share in his goods; and directed an allotment and assignment accordingly ; and that the same be reported to the court, with any matters by themselves thought pertinent, or by the parties required. And directed that the complainant Gee, and the defendant John Wilkinson, render an account of their administration of the estate of Sarah Jones.
And afterwards, on reconsideration of the papers, &c., he declares, that the land which Sarah Jones, who died an infant, derived from her father, descended exclusively to her sister Elizabeth Blunt. That Elizabeth Blunt, and her half brother William H. Gee, and half sister Lavinia N. Gee, succeed (exclusively of the mother Mary Gee, the com *489 plainant,) the first to one moiety, and the second and third to the other moiety of the land which descended to Sarah Jones from her brother John Norfleet: And that of lands of Sarah Jones, (and there seems to be none of this description, except what are comprehended under one or other of the former,) her heirs succeed her mother and whole blood sister, each to two sixth parts, and her half blood brother and sister each to one sixth part: and directed partition to be made accordingly, and moreover required a list of the slaves to which Lavinia N. Gee, by the will of her sister Sarah Jones, is entitled.
J805. _ Gee&al.
John Norfleet, at the time of his death, being of the full age of twenty-one years, his lands descended, according to the course prescribed by the act of 1785, without regard to the parent from whom they were derived. The plaintiffs Mary Gee his mother, and his half brother William H. Gee, (and his half sister Lavinia Norfleet Gee, if born, which seems doubtful,) were therefore capable of taking a part thereof, by immediate inheritance from him. That part which descended to Sarah Jones his sister, had she been dead, at the time of his decease, would have been liable to the same course of inheritance: the descent to Sarah Jones, could not interrupt that course. This case clearly proves that the policy of the law was not to prevent lands, which may have descended on the part of the father to an infant, from being inherited according to the general course of the act of 1785 ; but such only, as descended immediately from the father. For it seems absurd to suppose the mother might inherit lands which descended immediately from her son, but could not inherit them after they had vested in another of her children. The mother, therefore, ought to have been admitted to one third of the lands which descended from John Norfleet to Sarah Jones; her daughter Elizabeth Blunt, of the whole blood to Sarah Jones, should have one third; and W. H. Gee and L. N. Gee, the brother and sister of the half blood, should have had the other third in equal portions between them.
*490 The first point made by the counsel for the appellants, in this cause is, that the plaintiff Mary Gee, the widow of Cordall Norfleet the testator, is not entitled to dower in the lands or slaves of her late husband; or to a distributive share of his personal estate.
I shall divide the consideration of this question, into two points:
1. Whether she is entitled to dower in the lands and slaves ?
2. Whether to a distributable share of the personal estate ?
First. The right of dower being a right to a freehold estate, could not by the common law, be barred by a jointure, or by the acceptance of any other collateral satisfaction, or recompence. Vernon’s case, 4 Co. 1. Co. Litt. 36, b.
But, by statute of the 27 H. 8, if a jointureabe made according to the purview of that statute, it is a bar of dower. Ibid.
A devise of an estate to a wife, cannot be averred to be in satisfaction of dower, or of jointure, unless it be expressed to be so in the will; for there can be no averment contrary to the will; and, consequently, no averment contrary to the consideration implied in every devise, which is the kindness of the testator. Co. Litt. 36, b. 3 Bac. Ab. 224, 225.
So where one devised lands to his wife during her widowhood, and she married again and brought dower, and this devise being pleaded in bar, it was held to be no bar, 1. Because a will imports a consideration in itself, and cannot be averred to be in bar of dower, unless it be so expressed. 2. Because dower cannot be of less estate than for life of the wife. 3. Because a right of dower cannot be barred by collateral recompence. Moore, pl. 103, cited 3 Bac. Ab. 125. 1 Eq. Cas. Ab. 218, c. n. 2 Eq. Cas. Ab. 386.
But although a collateral satisfaction is not pleadable at law, in bar of dower, yet acceptance of a term of years, or of a sum of money, or of any other kind of collateral satisfaction, in lieu of dower, is a good bar in equity. Harg. Notes on Co. Litt. 36, b. n. 1, who cites Lawrence v. Lawrence, 2 Vern. 365.
*491 And though a devise cannot, at law, be averred to be in satisfaction of dower, if the will be silent, yet courts of equity have been induced, by special circumstances, to consider such devises as a satisfaction; and it has therefore been decreed that the wife should make her election to waive her dower, and accept under the will; or to waive the will, and take her dower. As where allowing the wife to take a double provision would be quite inconsistent with the dispositions of the will. Harg. Co. Litt. 36, b. n. 6.
But even in a court of equity, it has been decided, that a devise of lands to a wife, who was entitled to dower, is no bar of dower, but a voluntary gift, unless it be said to be in recompence, or in satisfaction of her dower. 2 Eq. Cas. Ab. 389, c. 18, cites Preced. Chan. 133, anno. 1700. Hitchin v. Hitchin.
And no chattel interest can bar dower, at law, or within the statute; yet where a term of years was settled in jointure in bar of dower, in regard the wife expressly consented, to accept such an interest for her jointure, the court would not admit her to have both. 9 Mod. 152. 2 Eq. Cas. Ab. 388. Eastwood v. Vincke, 2 P. Wms. 616.
But now, by the act of 1785, ch. 65, (L. V. 194, ch. 94), if any estate be conveyed by deed or will, either expressly, or by averment, for the jointure of the wife, in lieu of her dower, according to the purview of that statute, such conveyance shall bar her dower. The statute requires, that the estate be made to take effect in her own possession, immediately upon the death of her husband, and to continue for her own life, at the least, determinable only by such acts as would forfeit her dower at the common law.
And if the conveyance be made before marriage, and during the infancy of the wife; or after the marriage, the widow, at her election, may waive such jointure, and demand her dower. Ibid. And no time is limited for her to make her election, in respect to her right of dower in lands.
And such right of dower cannot be prejudiced by any devise in the will of the husband, 1785, ch. 61, (L. V. *492 1794, ch. 92,) nor by any alienation or conveyance thereof .... by him, during his lifetime, unless she shall have relinquished her dower, by deed, executed, acknowledged and recorded according to law. 1785, ch. 65. edi. 1794, ch. 94.
Since the commencement of these acts, the right of dower in Virginia, cannot be barred, or prejudiced, by any act of the husband during the coverture, to which the wife shall not have given her consent, by matter of record; nor by his last will, without her consent, after the death of her husband, either expressly given, or by necessary implication. For although a devise or legacy to her should be expressly declared to be in lieu and satisfaction of her dower, yet she cannot be bound thereby, unless she chooses it, inasmuch as the statute expressly reserves to her the right of waiving, or accepting it, as she pleases.
A waiver may be either express or implied. Express,where the devisee actually refuses to accept the thing devised. Implied, where the devisee does some act, from whence it may be inferred that she does not accept the benefit intended her under the will. Gosling v. Warburton, 1 Cro. 128. 3 Bac. Abr. 225.
For it is a conclusion in equity, that wherever any person, having a claim upon a man’s estate, independent of him, and also a claim thereupon, under his will, which claims are repugnant to each other, pursues the former, the latter is -thereby waived, or abandoned ; for it being against the intention of the will, that the devisee should have both, equity therefore considers such devise to be upon an implied condition, that the devisee shall abandon his original title, or shall waive his title by devise. Pow. Dev. 443.
The cases of Axtel v. Axtel, 2 Ch. Cas. 24. Thomas v. Gyles, 2 Vern. 232. Noys v. Mordaunt, Ibid. 581. Herne v. Herne, Ibid. 555. Streatfield v. Streatfield, Cas. T. Talb. 176. Robinson v. Kingsley, 1 Ves. 238. Heather v. Rider, 1 Atk. 426. Boughton v. Boughton, 2 Ves. 12. Arnold v. Kempstead, Ambler, 466. Villareal v. Lord Galway, Ibid. 682. Jones v. Collier, Ibid. 730. Newman v. *493 Newman, 1 Bro. C. C. 187. Boynton v. Boynton, Ibid. 445, and several others, have all been decided, professedly, upon this principle; though the application of it to some the cases has not been always as satisfactory to my mind as I could have wished.
But where the intention of the testator is not manifest, and the devise or legacy is not repugnant to the wife’s right of dower, she has been decreed to take both.
As in the case of Lawrence v. Lawrence, 2 Vern. 365, where the testator devised some legacies out of his personal estate to his wife, and a part of his real estate to her during her widowhood, and devised the residue of his estate to trustees for twenty-one years, for payment of his debts, with remainder over to the plaintiff. In this case, although the lord chancellor held, that, in equity, this devise ought to be taken, as intended in lieu and satisfaction of dower, and that such intention might be collected from the will, yet his decree was afterwards reversed by lord keeper Wright, and that reversal was affirmed in the house of lords. 1 Eq. Cas. 219, c. 2. Harg. Co. Litt. 36, b. n. 1, 6. And the case of Forsight v. Grant, 1 Ves. jr. 298, seems to have been decided upon the same principle.
Therefore, in order to put a widow to the alternative of either waiving her interest under the will of her husband, or foregoing her right of dower in his lands, it must be clearly evinced, that, her taking both interests, will defeat the general intent of the devisor. Pow. Dev. 466, 7.
As, in the case of Incledon v. Northcote, 3 Atk. 430, where lord chancellor Hardwicke held the widow was entitled to her dower, as well as to the devises and legacies contained in the will; for, in that case, as he said, the widow’s claim did not, as in Noys v. Mordaunt, overturn the will, in toto, but was merely a temporary interest, and the estate would afterwards go as the testator intended it. And, in the case of Ayres v. Willis, 1 Ves. 230, bis lordship decreed upon the same principles, in favour of the widow. And the same principle seems to have been recognized by *494 lord chancellor King, in Waller v. Fuller, 2 Eq. Cas. Ab. 301, c. 18; and by lord Macclesfield, in Lemon v. Lemon, although the lands devised to the widow, for her life, were of more value than her dower. Ibid. c. 13. And, in French v. Davies, where the testator devised to his wife the remainder of a term, and other personal legacies, so long as she continued a widow, but, on her marriage, to go to his executors, and fall into the residuum of his estate, for the purposes in the will mentioned; and, upon a bill brought to have the will established, and the trusts performed, the principal question was, whether the widow should be put to her election, to take the benefits given her by the will, or her dower out of the testator’s real estate, the master of the rolls said, “ It was contended for the plaintiffs, that upon the face of the will, it is clear the testator not only could not mean that the widow should have her dower, but that he intended to exclude her. The latter is the true ground to take in this case; it is not enough to contend, that he did not intend it; for she does not want his intention in her favour; but it is necessary to prove he intended to exclude her. If they do not make that out, she has a right to take dower, and to claim all other benefitsAnd he refused to put her to her election, 2 Ves. jr. 576; and, in Strahan v. Sutton, the same principle is laid down, almost in the same words, by the master of the rolls, 3 Ves. jr. 250: And, in that case, the master of the rolls said, it is clearly decided, that a gift of an estate out of which the widow is dowable, does not prevent her from taking any other estate the testator has thought fit to give her; and decreed accordingly. And, in Pearson v. Pearson, 1 Bro. C. C. 292, lord Loughborough said, that the gift of an annuity, to the wife, may be a bar of dower, or may not, according to the language of the will: it had been held to be a bar in a case where the other devises in a will could not take effect: in the principal case, if the value of the lands should not be sufficient to satisfy the two annuities and the dower, it would prove it was intended to be a bar; otherwise, there was *495 nothing m the will to shew such intention, and there must . , . , , , be such an intent, to make it bar dower.
From this last case, it appears, that it is not necessary that the testator should expressly declare his intention that the devise shall be in satisfaction of dower; but, that it is sufficient, if it appears by circumstances. And the cases of Jones v. Collier, Ambler, 732; Arnold v. Kempstead, Ibid. 466, and Villareal v. Lord Galway, Ibid. 682, have been decided upon this principle.
And the acceptance of a legacy or devise under a will, in satisfaction of dower, may, as well as a waiver, be either express, or implied; so as to bar the right of election, after.
As where one devised the third part of all his lands to his wife, in recompence of her dower, the testator being seized in fee of certain lands in soccage, and of other lands in tail, held in carite ; and she entered into the third part of the fee simple lands, without bringing her writ of dower: And it was said, that she, by entering into the third part, shewed her intention to have it by the devise; for, otherwise, she could not enter till assignment by the heir or sheriff. And held, she was barred of her dower thereby. Dyer, 220, cited 3 Bac. Ab. 225.
So, where the husband devised all his real and personal estate in trust, for his wife for life, provided she should not marry, and made her his executrix : the trustees not acting, she took possession; after receiving the rents and profits for five years, she was not allowed to elect a sum, under a marriage settlement; the estate being a free fund from the beginning ; and no suggestion that the real or personal estate was in such a situation as to render it doubtful, what the result would be. Butricke v. Broadhurst, 1 Ves. jr. 171, 336, in note.
But where an estate has been incumbered, or the testator’s affairs unsettled, or other circumstances rendered it doubtful what might be the result of an election, courts of equity have been less strict in their construction of such acts and circumstances, as may amount to implied acceptance, under *496 the will, so as to preclude the party from an election thereafter.
Thus where the testator, by his will, gave to his widow a legacy and an annuity, and made his son his residuary legatee ; the widow received the legacy, and also her annuity for three years, and then brought a bill, claiming both the interests under the will, and her dower; and it was objected, that she cannot abide by the will, having made her election, by receiving the legacy and annuity for so long a period; but Buller, judge, sitting for the lord chancellor, said that the point was, whether she had full knowledge of the circumstances of the testator, and of her own rights. If she had acted with full knowledge, she should not after deny it; and he decreed, that she might elect, and an account of the legacy and annuity was directed. Wake v. Wake, 1 Ves. jr. 335.
In Gibbons v. Count, lord Loughborough says, that no man can doubt, that the high court of chancery will never hold parties acting upon their rights (doubts arising as to those rights) to be' bound, unless they act with full knowledge of all the doubts and difficulties that arise, 4 Ves. jr. 849; otherwise, if full knowledge, &c. And, in Newman v. Newman, where the master of the rolls decreed that the widow must elect between taking under her husband’s will, not duly executed to pass lands, or under a settlement before marriage, yet he postponed the election, until an account should be taken of the personal estate. 1 Bro. Ch. Cas. 187.
In Hinder v. Rose, 3 P. Wms. 125, n. it is said that, in no case, under the custom of London, should a child be obliged to make an election, till after an account taken. So in Whistler v. Webster, 2 Ves. jr. 371.
And, in Pusey v. Desbouvrie, 3 P. Wms. 316, where a freeman of London bequeathed £10,000 to his daughter, upon condition that she should release her orphanage part, &c. And she, being then about twenty-four years of age, did release accordingly, and received the money. And although, *497 before she executed the release, she was told she had it in her election to have an account of her father’s personal estate, and to claim her orphanage part, the lord chancellor seemed to think, that as she did not know what her orphanage part did amount to, she was not bound even by her release : but the suit was compromised.
In Boynton v. Boynton, the master of the rolls declared that, as no account of the testator’s personal estate, and of his debts, &c. had been taken, the defendant, lady Boynton, was not obliged to make any election, until the account should be taken, and it should appear out of what real estates she was dowable, at the time of the testator’s decease. 1 Bro. Ch. Rep. 445. In this case, the defendant was executrix to her husband, and had proved the will, yet it did not bind her. And although lord Northington, Ambl. 533, held that the probat of the will by an executor, amounted to an election, and acceptance of the benefits under the will, yet the house of lords held otherwise. 5 Ves. jr. 484.
And when a testator has given to his wife that provision which he meant to be a satisfaction for any claim she might have against the other objects of his bounty, if by any accident those objects were unable to claim the benefit of that exclusion, it has been held that no other person can set it up against the widow.
And, therefore, where a testator gave to his wife real and personal estate in bar and satisfaction of dower, or thirds, &c., and gave the residue to four persons, and afterwards, by codicil, directed them to dispose thereof in charities, part of this residue being vested in real securities, the disposition of which to charitable uses was void by the statutes of mortmain, the master of the rolls held the widow was not barred of her distributable share of this surplus, by the devises in the will, Pickering v. Lord Stamford, 3 Ves. jr., 337, 338 : and this after the widow had accepted the provision for her in the will, and after thirty-five years had elapsed before the question, as to this part of the estate, was stirred. 3 Ves. *498 jr. 279 582. And this decree was made on the authority of lord chancellor Cowper, in Sympson v. Hutton, 2 Eq. Cas. Ab. 439, c. 35 ; but more fully stated by the master of the rolls, from the register’s book. 3 Ves. jr. 335. But he seems to have held that the case would be different, if the devise of the real estate should descend to the heir; for that the testator’s meaning must be supposed to be in favour of his real estate at all events, into whose hands soever it might come. Ibid. 337.
And, in none of these cases of election, does it seem to have been held material whether the estate devised was of equal value, or that the widow should have a certain, and indefeasible interest therein; or that the thing given, by the devise, was of the same nature, Pow. Dev. 449, 450. Streatfield v. Streatfield, Cas. T. Talbot, 176. Boynton v. Boynton, 1 Bro. C. C. 445; although a contrary doctrine, as to this last point, seems to have been held formerly, Eastwood v. Vincke, 2 P. Wms. 616.
It may possibly save time, if, before I proceed to consider the application of these principles and authorities, I should proceed,
Secondly, to say a few words concerning personal estate.
Although, by the old common law of England, it would appear, that a man could no more deprive his wife of her thirds (or pars rationabilis bonorum) of his personal estate, by his will, than he could of her dower in the lands whereof he died seized of an estate of inheritance, yet that law, partly by imperceptible degrees, and partly by different statutes, is now totally abolished throughout England ; and a man may, there, dispose of his personal estate as he pleases, by his will, and the claims of the widow, children and other relations, to the contrary, are totally barred. 2 Black. Com. 493. But our ancestors, in this country, have proceeded differently, and, from the year 1672, to the present time, the husband has been restrained from depriving his wife, by his will, of her share of his personal estate, without her own consent, express or implied : The act of 1672, ch. 1, Purvis.
*499 The act of 1705, ch. 7, is still more explicit, declaring that when any person dies testate, if he leaves one or two children and no more, he shall not have power to dispose more than two thirds of his estate by will, to any other person or persons than his wife, and one part thereof, at the least, shall be given to her; and if he leaves more than two children, he shall not leave his wife less than a child’s part; and if no children, she shall have, at least, an equal moiety of his estate. And any will, wherein a lesser provision may be made for the wife, shall, as to her, upon her petition to the court where proved, be declared null and void. No time is limited by this act, or the former, within which the application must be made. But, by the act of 1727, ch. 4, her renunciation must be made within nine months after her husband’s death, before the court where the will may be proved; or by deed executed in the presence of two or more credible witnesses: and, if it be not made within that time, the act declares, that she shall be forever barred to claim any other part of her husband’s estate, than shall be given by the will.
Considering the acts of 1672, and 1705, as merely declaratory of the common law, which our ancestors brought with them, I have always inclined to consider the act of 1727, as an act of limitations only, which bars the remedy of the widow, after the time limited; but leaves the right as it stood before the passage of that act. The widow’s right to dower in lands, and to a distributable share of her husband’s estate, being not merely a right derived under a statute, but a moral right, 2 P. Wms. 634, 637; recognized and enforced by the common law, and founded upon the solid basis of reciprocal justice, (the husband, by the marriage, being invested with the whole of the wife’s personal property, of which the law, in case of his death, gives her back but a part,) she is surely as much entitled to the benefit of an equitable construction of this act, which bars her right, as a common creditor, whose debt, though barred by the act of limitations, has been held to be protected *500 against its operation. As where there is no executor, against whom, the creditor could bring suit, 2 Vern. 694, 5 : this and several other cases have been held to prevent the operation of the statute of limitations in the case of a common debt. 1 Eq. Cas. Ab. 303. 2 Eq. Cas. Ab. 578, 9. And why may not circumstances of equal weight prevent this bar of the widow’s claims ? Suppose a contest about a will, to the establishment of which the widow was a party opposing ; or suppose the contest to be which of two wills should be established, would this court decide, that the widow was absolutely barred, if she did not renounce within nine months, although the contest should be still depending? Are there no other circumstances which, in equity, may excuse her not making her renunciation within a limited time? Suppose, a man of large personal property in possession, but indebted to an uncertain amount, (which is a case which happens every day in Virginia,) should leave his widow some inconsiderable legacy, after payment of his debts, in lieu of her thirds: Here, the widow could neither claim the legacy, under the will, nor her distributable part of the testator’s estate, until his debts were paid : would equity deprive her of her election, before the accounts were liquidated ? If it would, equity is one thing on this side of the Atlantic, and another in England, as may appear from the cases of Wake v. Wake, Newman v. Newman, Hinder v. Rose, Whistler v. Webster, and Pusey v. Desbouvrie, before cited. In the case of Pusey v. Desbouvrie, where the daughter had executed a release of her claim to the orphanage part of her father’s personal estate, and it was insisted, that, if she were even ignorant of her rights, she ought nevertheless to be bound by her release, for ignorantia juris non eoecusat, lord Talbot said, “it seemed hard a young woman should suffer from her ignorance of law, or of the custom of the city; or that the other side should take advantage of such ignorance. That not only the counsel had differed in opinion, but the court themselves had varied in their determinations, and if the court had not till very lately, agreed in what shares or *501 proportions the customary part should go, the daughter might well be ignorant of her right, and ought not to suffer, or give others an advantage, by such her ignorance.” The decree in this cause, if erroneous, proves the uncertainty which this question has hitherto remained; and, if that venerable and enlightened judge, who pronounced this decree, should have mistaken the law in this case, can it be surprising that the widow of Cordall Norfleet, should be so far ignorant of it as not to know how to act with safety ? The case of Dandridge v. Dorrington, (ante. 351,) is probably the first decision, which even this court has pronounced upon this important, and, perhaps, heretofore misconstrued act.
The act of 1785, c. 61, (edi. 1794, c. 92, sect. 25,) extends the period within which the wife must make her renunciation, to one year, instead of nine months; and declares, that every widow, not making a declaration within that time, shall have no more of her husband’s slaves and personal estate than is given her by will. I can discover nothing, in this difference of phraseology, from that of 1727, c. 4, which is materially variant from the purview of that act.
Having traced the widow’s right, to her distributive share of her husband’s estate, to the common law, I was in hopes, that I should have found something in the cases arising under that law, or under the customs of York or London, which might have aided my judgment upon this subject. But I have not been able to collect any thing from that source, more than I have already noticed, that would seem applicable to the general question before us. The general principles and authorities, already cited, therefore, must guide me in considering the question of the widow’s right, both to the real and personal estate; except so far as the positive provisions of these latter acts, may deprive the widow of that equity, in respect of the personal estate, which has not yet been denied to her by statute, in respect to her right of dower in lands.
Cordall Norfleet, by his will, after devising to Cordall N. Bynum, 694 acres of land in North Carolina, and all the re *502 sidue of his lands to his son John Norfleet, both in fee simpie, proceeds thus: I give, to my beloved wife Mary Norfleet the use of all my land, for the benefit of my children, Elizabeth Norfleet, John Norfleet, and Sarah Norfleet, during her life, or widowhood, or until my son John Norfleet shall come of age, at which time my said wife shall have the use only of the plantation, whereon I now live, containing 1400 acres. I do also give to my wife Mary Norfleet, during her life or widowhood, all the residue of my estate that I may die possessed of, to make use of for the benefit of my children Elizabeth Norfleet, John Norfleet and Sarah Norfleet, to them and their heirs forever: At which time my will and desire is, that my wife Mary Norfleet, my friends John and James Wilkinson shall divide my estate in such manner, as they may think best, between my children Elizabeth Norfleet, John Norfleet and Sarah Norfleet, to them and their heirs forever, and appoints his wife and the above named John and James Wilkinson his executors.
1. The first question, that arises upon the construction of this will is, whether, by these words of the will, the widow Mary Norfleet took any beneficial interest, whatever, in the .lands, or personal estate; or merely a naked trust, for the benefit of the testator’s children ? And it seems to me that she took no beneficial interest, whatever, under the will, but a naked trust. If the first part of the devise, which relates to lands, be construed into plain English, it stands thus: I give all my lands to Cordall Norfleet Bynum, and to my son John Norfleet, in fee simple. But until my son John Norfleet comes of age, I give the profits, thereof, to my wife Mary Norfleet for the benefit of all my children, provided she remains a widow: And whenever she shall marry, or my son John Norfleet arrives at age, she shall have the use only of the plantation whereon I now live, upon the like trust. Pow. Dev. 293. Carpenter v. Collins, Ibid. 290.
If Mary Norfleet had been any other than the widow of the testator, there could not possibly exist a doubt, that this *503 would be the true construction of this devise; for the words, the use of all my land, for the benefit of my children, are too strong to admit of any other meaning whatsoever, than that the whole of the profits should be applied for their maintenance and education; and, if any surplus, that it should be accounted for. And this construction is strengthened beyond a doubt, by the subsequent devise of all the rest of his estate, to his wife during her life, or widowhood, to make use of for the benefit of his children Elizabeth Norfleet, John Norfleet, and Sarah Norfleet, to them and their heirs forever; and, after the determination of that trust, that the subject itself be divided between his said children Elizabeth Norfleet, John Norfleet and Sarah Nor-fleet, to them and their heirs forever. Here, the testator has made a double disposition; first of the profits, to his children, respectively, and their heirs forever; and then of the subject itself, in like manner. The word benefit is a word of much stronger and more general signification, than the words maintenance, education, support, &c., which frequently occur in wills. I know there are cases, where a devise of lands, or the profits of lands, to the testator’s wife, or executors, for these purposes, have been held to carry an interest, Pow. Dev. 301; but none of those cases come up to the present, where the whole benefit of the devise is to go to the children, and their heirs forever, according to the words of the will in the latter clause. Can it be contended that the widow was only bound to furnish them a maintenance, or education, where the testator’s meaning is so strongly expressed, that they shall have the whole benefit ? The devise, in this case, in fact, amounts only to appointing the widow to be the executrix of her children’s property. And as the testator has given the whole profits of the real estate, until his son should come of age, to his wife, for the benefit of his children, respectively, but after that period, has limited his wife to the use of the home plantation only, without declaring any other use, than that which he had first declared, viz: for the benefit of his children, it seems to *504 me that she is to be considered as holding that part, after son should come of age, or she should marry, to the use first declared. For there is but one devise, and one use declared, viz : for the benefit of his children; the latter part of the sentence amounting only to a diminution of the quantum of the estate, and not to any change, or alteration, of the use first declared. Let it be supposed, that she had continued a widow, until John Norfleet the son came of age, the use of all the rest of the testator’s lands, except the home plantation, would have ceased, from that moment; but the use of that plantation would have remained, and also the use of all the rest of his estate, during her life, or widowhood; but yet the benefit of the personal estate, by the express words of the will, and that of the home plantation, by necessary intendment and construction, would continue to be for the children. Brown v. Casamajor, 4 Ves. jr. 498. In which it was held, that a devise by a stranger to H. S. of £ 7000, the better to enable him to provide for his younger children, made the devisee a trustee for the principal, though permitted to receive the interest.
If it be contended, that the use of the home plantation must be intended to have been meant for her own benefit, and in lieu of her dower, I answer, that there is not a word in the will (except the words, dear wife) that shew the testator even remembered he had a wife, or that it was, at all, his duty to provide for her. On the contrary, it is manifest he intended she should have no part of his personal estate, in case of marrying, nor any beneficial interest, in it, in case she did not. For she was to take it, to make use of for. the benefit of her children, to them and their heirs forever. Stronger words of exclusion could not be used, as to the wife’s participating in any benefit. There is no rule to which I yield a more perfect assent, than that a judge in equity, is no more at liberty to raise inferences, than a court of law. 5 Ves. 805. And no rule of law is better known than this, that no devise, by implication, shall be raised in *505 favour of any one, (even a wife), but by necessary and unavoidable construction, as where lands are devised to the testator’s heir at law, after the death of his wife, to which this devise does not bear the most remote resemblance. Cartwright v. Vawdry, 5 Ves. 532. And I should hold it an abuse of the power of a court of equity to construe words in a devise, which, in the case of a stranger, would create a naked trust, without any benefit whatsoever, to mean a benefit to the wife of a testator, merely for the purpose of putting her to her election; or of working a forfeiture of her right to dower and distribution.
If indeed she took a beneficial interest in the lands, (which I cannot conceive), I admit that the word only, in the latter part of the sentence, would enforce us to declare it was intended as in lieu and satisfaction of her dower. But under the construction, which I conceive it to be proper to make, I consider the word only as merely descriptive of that part of the lands which should still remain in the occupation of the widow, for the benefit of the testator’s children. And I agree most perfectly with the lord commissioner Ashurst, 1 Ves. jr. 561, that no case of election can exist, but where a person has a decided interest before, and something is left to him by the will. Here, nothing, or which is the same thing, no beneficial interest is left to the wife by this will. Both common law and our statutes are expressly in her favour; and equity surely will not take up arms against both. I hold, therefore, that she is well entitled to dower in all her husband’s lands, whether in this state, or elsewhere, for any thing contained in the will of the husband. But that she must account for the profits of all the lands, as far as the same have come to her hands, either in this state, or elsewhere, subject to a deduction of one third part, for her right of dower therein, until she gave up the possession thereof. But, inasmuch as a considerable part of the testator’s lands lie in North Carolina, and Cordall Norfleet Bynum, one of the devisees, is not a party to this suit, I conceive that no account should be required of the profits of *506 those lands, unless he be first made a party to this suit, and that he, and the present appellants shall consent to a decree for assigning her dower in all the testator’s lands, as well in North Carolina, as in this state; or, unless the present defendants will agree that she shall be fully endowed, out of the. lands in this state, as if the whole had been within the state; or, until it be made to appear that dower hath been assigned her in the Carolina lands.
2dly. As to the personal estate.
In speaking of the construction of the will, as to real estate, I have had occasion to remark, that the testator manifestly intended to give her part of it, in case she should marry again, and no beneficial interest in it, in case she did not. If he had said in express terms, it is my intent and meaning that my wife shall not have the value of a farthing of my personal estate, and had then bequeathed the whole to his children, or any other object of his bounty, he could not, to my apprehension, more clearly have deprived her of every atom of it, than he has done, by this will, for any beneficial purpose, to herself. Wherever any person gives property, and points out the object, the property, and the way it shall go, it creates a trust, unless he clearly shews that his desire expressed is to be controlled by the party; and that he shall have an option to defeat it. 2 Ves.jr. 335. Here, is not the shadow of control, or option, left to the wife : All that is given her is -expressly declared to be for the benefit of the testator’s children, by name, and their heirs after them. There is then no provision for the wife; but a disherison in disguise. The widow might have been lulled into an idea, that there was a provision, out of both the real and personal estate, made for her. She may have acted, and probably did act under this delusion : She let the year of renunciation pass over, probably without dreaming that she was left forlorn, without house or home, or dower, or distributable portion. Is her case the only one, to which equity will not extend its relief? Is the law of renunciation the only rigid rule, in our code, which equity cannot soften ? *507 I have proved, I think, already, that there may be cases, in which equity might with equal propriety interpose to soften its rigours, as those of the acts of limitation, 1 Fonbl. Eq. B. 1, c. 4, sect. 27, n.; or of the statute against frauds and perjuries, Ibid. B. 1, c. 3, sect. 8, and n.; or to go no further, the acts for securing to widows their dower in lands: All which have been taught to bend beneath the plastic hands of courts of equity. There is not one of the cases, which I have before cited, where ignorance of the party’s rights was held a sufficient reason for not precluding them from election, that appears so strong, to my mind, as this. I hold, therefore, that notwithstanding the lapse of the year, the widow is not barred of her distributable share of the personal-estate. Nothing was given her; there was no legacy, no bequest, no provision, for her to renounce; no benefit was given her, or appears to have been intended for her, by the will. She accepted nothing but a naked trust for the benefit'of her children — not of herself; and she has forfeited nothing, by not renouncing it, within the time mentioned in the act of assembly.
I am therefore of opinion with the chancellor, “ that the appellee, Mary Gee, by failure to renounce the benefit (if it were a benefit) bestowed upon her, by her former husband in his testament, was not barred of her dower in his lands, nor of her share of his goods,” including his slaves under that denomination. And I approve of the direction made, in pursuance of that opinion, except that the widow must account for the profits of the personal, as well as of the real estate, subject to a deduction of her own proportion, (or third part thereof,) so long as the same remained in her possession; and to a similar condition (if necessary) on the part of the appellants; that they submit the whole subject of the personal estate, wherever the same may be, within or without the state, and including the man slave given to Cordall N. Bynum, to the disposal of the commissioners directed to carry that direction into effect.
*508 In the preceding discussion, I have, necessarily, spoken to all the points made by the appellants’ counsel; and to the three first made by the counsel for the appellees. Two others remain to be noticed from that side, viz :
4. _The disposition of Sarah Jones’s lands; and
5. That Mary Gee is entitled to a share of John Nor-fleet’s real and personal estate. I shall notice the last first.
John Norfleet, having attained the age of twenty-one years, his whole estate, whether descended from his father, or purchased by him, or his guardian for him; and whether lands or personal estate, must be divided between his mother, brother, and sisters, whether of the whole or half blood, pursuant to the act of 1792, (edi. 1794, c. 93, sect. 4, 15.) The bill contradicts itself, stating, first, that John Norfleet died leaving a sister called Lavinia Norfleet Gee, of the half blood : but, afterwards, it states, that she was born after his decease. If this be the case, the estate being divided into seven parts, the mother is entitled to two : the appellant Elizabeth Blunt, and her deceased sister Jones, then in life, and of the whole blood to John Norfleet, each two; and the appellee William, Henry Gee, the brother of the half blood, to one part only; and Lavinia is wholly excluded.
As to the lands of John Norfleet, which descended to Sarah Jones, upon his death, it is worthy of observation, that John Norfleet, having attained his age of twenty-one years, his paternal lands, as well as his purchased lands, descended as just mentioned, to his mother and sisters, without regard to the parent from whom they were derived. That part which did descend to Sarah Jones, might, if she had then been dead, have gone in the same course, as the other, by immediate inheritance from him. Consequently, his mother, and brother and sister of the half blood, (if the latter were then born,) might have come in for their parts of it. Now, the descent to Sarah Jones, could not, I conceive, alter, or interrupt, that course. For it would seem absurd, as before remarked, to suppose the mother (and fraternal kindred of the half blood,) might inherit lands immediately *509 from the son, or brother, but that she could not, after the lands had vested in another of her own children. And the case is the same as to the brother and sister. The mother, therefore, ought to have one third of the lands which descended from John Norfleet to his sister Sarah Jones ; her daughter Elizabeth Blunt, being of the whole blood to her sister Sarah Jones, one other third ; and the remaining third descends to William, Henry Gee, and Lavinia Norfleet Gee, the brother and sister of the half blood, in equal portions. And, upon these principles, I think the latter part of the decree should be amended.
Although nothing of the kind has been suggested from the bar, either on this, or any other occasion, that I know of, where the husband and wife have come into a court of equity to obtain something in right of the wife, and which the husband could not obtain without joining her in the suit, yet I beg leave to submit to the court, the propriety of adopting, not only on this, but on all future occasions of the like nature, that most just rule of the courts of equity in England, that the husband, if there be no previous settlement, is bound, in conscience, to make a settlement upon his wife at least adequate to the fortune he may recover, in her right, through the aid of the court; and therefore the court of chancery shall not part with the property to him, unless he do make a proper settlement upon her; or unless she come into that court, and give her consent voluntarily, that he shall receive it. And I beg leave to refer to 1 Fonbl. Eq. 94, note k. Ibid. p. 99. Ibid. 316, note y. 2 Fonbl. Eq. 231, note c. 3 Ves. jr. 98, 469. 4 Ves. jr. 737, 744. 2 Ves. jr. 98, 469. 4 Ves. jr. 607, 680. 3 Ves. jr. 166, where the husband being a bankrupt, his assignees, suing for the property of the wife, were compelled to make a settlement, of part, upon her. And even where there was a settlement upon the wife, of her own bank stock, after marriage ; and the husband soon after became a bankrupt, this stock was decreed to his assignees, subject to a provision for his wife. Pringle v. Hodgson, 3 Ves. jr. 617. 5 Ves. jr. 517.
*510 [In judge Tucker’s note book, there is a marginal note, which states, that the foregoing opinion was delivered, by him, in conference with judges Lyons, Carrington, and Fleming: judge Roane not sitting in the cause.
There is also another marginal note, which states that, judge Tucker haying delivered his opinion in conference as above, from which the majority of the judges dissented, as to the personal estate, he declined (merely to save time) delivering the said opinion in court.
Another note is added at the foot of the opinion, as follows : “ After a conference, and several conversations, between myself and the other judges, except judge Roane, who did not sit in the cause, judges Lyons, Carrington, and Fleming, concurred in the following decree, (see below,) that the appellee, by not renouncing the provision made for her by the will of her former husband Cordall Norfleet, and all benefit which she might claim by the same, within one year from the time of his death, is barred, by law, from claiming, or having more, or the use of more of his slaves and personal estate, than is given her by his will, but that she is not thereby barred from her dower in his lands. That she was, by the said will, entitled to the rents and profits of all the estate, real and personal, (except the land and slave devised to Cordall Norfleet Bynum,,) for the maintenance and education of the children of the said Cordall Norfleet, and for her own support, until his son John Norfleet attained his age of twenty-one years; or she should again marry, whichsoever should first happen, without account; and that the appellee James Gee, is entitled to an allowance for board and expenses, for such of the children of the said Cordall Norfleet, as have lived with him, from the time of his marriage with the widow, to be charged to them respectively; and decreed an account, subsequent to the marriage, Sic., and of administration also, on account of the administration of Sarah Jones’s estate, (dissentients Tucker.)
“ They concurred with me in opinion, as to the partition and division of John Norfleet’s estate, real and personal, as *511 well that which he derived from his father, as that which , . . . was otherwise acquired,
“They likewise concurred with me in opinion, as to the partition of that part of his lands, which descended to his sister Sarah Jones, and decreed accordingly.”
He adds in a marginal note, “ N. B. Noel v. Garnett, (4 Call, 92,) was decided in like manner, October 1786;” and refers to 3 Bro. C. Rep. 349.
Although the opinion of judge Tucker, was not delivered in open court, yet the reporter has published it at large; because it contains almost all the doctrines upon subjects of that kind | and he thought it would be agreeable to the profession, to see on what points judge Tucker differed from the majority of the judges.]
Lyons, President,
delivered the opinion of the majority of the judges (that is to say, of himself, judge Carrington and judge Fleming), that the decree of the court of chancery should be reversed,, and the following decree made :
The court is of opinion that the appellee Mary, by her not having renounced the provision made for her by the will of her former husband Cordall Norfleet, and all benefit which she might claim by the same will, within one year from the time of the death of the said Cordall, is barred, by law, from claiming, or having, more, or the use of more of her said husband’s slaves and personal estate than is given her by his will; hut that she is not thereby barred from her dower in the lands whereof her said husband was seized during the coverture, according to the act relating to dower. That she was by the said will entitled to the rents and profits of all the estate real and personal of the said Cordall Norfleet (except the land and slave devised to Cordall N. Bynum), for the maintenance and education of the children of the said Cordall Norfleet, and for her own support during her widowhood only: And that the appellee James Gee is entitled to an allowance for board and expenses of the children of the said Cordall Norfleet, during *512 the time they lived with him after his marriage with the appellee Mary, to be charged to them respectively. That the appellees, Gee and wife, should make up an account of her administration on the estate of the said Cordall Norfleet, and of the slaves and personal estate received by them as her dower and distributive share of the said CordalVs estate, under the decree of Southampton county court in the proceedings mentioned, and of the profits of both, since so received by them: And that the appellees James Gee and John Wilkinson should make up an account of their administration on the estate of Sarah Jones before such person or persons as the high court of chancery shall appoint for that purpose, to make reports in order to a final decree as to the distributive shares of the said slaves, personal estate, and profits according to law. That dower or partition of the lands lying in the state of North Carolina ought not to be decreed, as they are not subject to the jurisdiction of the high court of chancery of this state.* And the court is further of opinion, that John Norfleet, the son and devisee of the said Cordall Norfleet, having attained the age of twenty-one years, and died intestate, his whole estate, as well real as personal, within this commonwealth, whether derived from his father, or otherwise acquired, descended to his next of kin in the following proportions, that is to say, to his mother, the appellee Mary Gee, two seventh parts, to his sisters of the whole blood, the appellant Elizabeth Blunt, and Sarah Jones, deceased, two seventh parts, each; and to his brother of the half blood, the appellee William Henry Gee, one seventh part: it being suggested in the bill, and not contradicted by testimony, that the appellee Lavinia Norfleet Gee was not born at the time of the death of the said John Norfleet, she is not entitled to any part or share of his estate; but as she was born before the death of her sister Sarah Jones, she is entitled to a share of the lands of the said Sarah Jones, which de *513 scended to her as aforesaid, by the death of her brother the said John Norfleet, the said Sarah, at the time of her death, being under the age of twenty-one years, and by incapable of making a will of lands, within this commonwealth; which, therefore, descended to her next of kin in the following proportions, that is to say, one third part to her mother, the said Mary Gee, one third part to her sister of the whole blood, the said Elizabeth Blunt; and one sixth part to her brother of the half blood, William Henry Gee; and one other sixth part to her sister of the half blood, the said Lavinia Norfleet Gee: And that partition as well of the estate real and personal of the said John Norfleet, as of the lands of the said Sarah Jones, which descended to her as aforesaid, be made accordingly, by commissioners to be appointed by the said court of chancery for that purpose, and that they make report of their proceedings accordingly to the said court of chancery. Therefore, it is decreed and ordered, that so much of the decree of the said court of chancery as is contrary hereto be reversed, and that the appellees pay to the appellants their costs by them about their appeal in this behalf expended, and that the residue of the said decree be affirmed. Which is ordered to be certified to the superior court of chancery, &c.

 So far, a majority concurred, but judge Tucker dissented.